IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HONORIO QUIROZ,          ) | CV F 03-5181 AWI SMS |
| )                       | |
| Plaintiff,           ) | PRETRIAL ORDER |
| )                       | |
| v.                      ) | Motions In Limine Hearing: |
| )                       | January 5, 2006 |
| ERNEST J. LICALSI, and COUNTY OF ) | 1:30 p.m., Courtroom 3 |
| MADERA, a Municipal Corporation and ) | |
| Public Entity,          ) | Trial:  January 10, 2006 |
| )                       | 8:30 a.m., Courtroom 3 |
| Defendants.        ) | |
| _____ ) | RULES OF CONDUCT |

The pretrial conference was held on December 8, 2005.   The trial in this matter is set for January 10, 2005.  The parties currently estimate that the trial shall take two weeks.

**I.  Jurisdiction and Venue**

The court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and has venue in this action pursuant to 28 U.S.C. § 1391(b).  These matters are undisputed.

**II.  Jury Trial**

The parties have invoked their rights to a jury trial under the Seventh Amendment to the United States Constitution as to all triable issues.

### III. Facts

#### A. Undisputed Facts

1. Plaintiff, Honorio Quiroz, came into the United States illegally and was in this country illegally at all times relevant to this action.

2. Plaintiff, Honorio Quiroz, purchased a false social security card and does not have a visa or a work permit.

3. Plaintiff, Honorio Quiroz, did not have a California driver's license at the times relevant to this action; and was also not licensed to drive in Mexico.

4. Plaintiff, Honorio Quiroz, did not have automobile insurance at all times relevant to this action.

5. Plaintiff, Honorio Quiroz, speaks Spanish and does not speak or understand English.

6. On October 16, 2002, Plaintiff, Honorio Quiroz, was involved in a motor vehicle accident with Ernest LiCalsi's son Eric LiCalsi, in the parking lot of the south campus of Maderal High School.

7. At the time of the accident, Plaintiff, Honorio Quiroz, was dropping off 14 year old Adrianna Hernandez, who was present when the accident occurred.

8. Plaintiff, Honorio Quiroz, gave a false name at the accident scene, writing it down on a piece of paper and handing it to Eric LiCalsi.

9. Plaintiff, Honorio Quiroz, understood that he was responsible for causing the accident and was responsible for the cost of fixing the car.

10. Plaintiff gave Eric LiCalsi a false name so he would not have to pay for the damage he caused to the vehicle.

11. Following the accident, plaintiff Quiroz made no attempt to contact Eric LiCalsi to pay for the damage to the vehicle he had caused.

12. Ernest LiCalsi has only a limited ability to speak and understand Spanish.

2

13.   During all of the contact between Emest LiCalsi and Honorio Quiroz, Fabian Benabente acted as an interpreter.

14.   Ernest LiCalsi had no physical contact with plaintiff at any time.

15.   Plaintiff was not handcuffed at any time.

16.   At the time of his contact with Ernest LiCalsi, plaintiff was subject to arrest and could have been charged with driving without a license and hit and run.  The vehicle involved in the hit and run could have been seized.

17.   After discovering that the insurance information supplied by the driver was no longer valid and that the name given was false, LiCalsi contacted Sgt. Ken alley of the Madera Police Department regarding making a report of the incident.

18.   LiCalisi understood that the Madera Police Department did not make reports concerning accidents in school parking lots, but would consider doing a report if LiCalsi could identify the driver.

19.   On October 22, 2002, LiCalsi asked the only Spanish-speaking investigator in his office, Fabian Benabente, to locate and identify the other driver.

20.   On November 14, 2002, between 7:30 and 8:00 a.m. DA investigators Markle and Benabente located plaintiff and made a vehicle stop.  The stop was lawful.

21.   Plaintiff Quiroz had no problem understanding Fabian Benabente's Spanish; understood that he had been stopped because of the expired license plate tags and the broken rear taillight; admitted his involvement in the accident; and admitted that he had given false information at the accident scene.

22.   Plaintiff attempted to conceal his identity at the time of the stop on November 14, 2002.  This constituted a separate and distinct illegal act committed in the presence of the officers, for which he could have been arrested and taken to jail.

23.   Plaintiff was subject to arrest, incarceration, criminal prosecution and possibly deportation.

3

24. Plaintiff Quiroz did not understand what Fabian Benabente and Ernest LiCalsi were saying to each other when they spoke in English.

25. Plaintiff believed that he owed the $500.00 insurance deductible to Ernest LiCalsi.

26. Fabian Benabente provided plaintiff Quiroz with receipts for the $500.00 plaintiff paid for reimbursement of Ernest LiCalsi's insurance deductible.

27. Ernest LiCalsi had already left Fabian Benabente's office when Benabente took plaintiff's photograph and gave the plaintiff the impression that he took his fingerprints.

28. Plaintiff Quiroz came to Fabian Benabente's office on November 27, 2002 to make a payment for LiCalsi.

29. No internal District Attorney Office number was ever assigned to the automobile accident incident.

30. Plaintiff paid to LiCalsi a total of $500, by paying $200 on November 14, 2002 and $300 on November 27, 2002.

31. At the vehicle stop investigator Benabente took possession of the wallet of Plaintiff and did not return the wallet to Plaintiff until Plaintiff, Benabente, and LiCalsi were in Benabente's office.

32. During the vehicle stop investigator Benabente's badge and gun were visible to Plaintiff.

**B.  Disputed Facts**

1. Whether Ernie LiCalsi believed plaintiff to be at the DA's office voluntarily.

2. Whether plaintiff went to the DA's office voluntarily.

3. Whether LiCalsi and Benabente had a "plan" to get LiCalsi's $500 back; and that LiCalsi should have anticipated what steps Benabente would have taken to facilitate the plan.

4. Whether LiCalsi intended to refer the case for prosecution.

5.  Whether there was a conflict of interest for LiCalsi to use a DA investigator to find plaintiff.

6.  Whether Benabente told plaintiff at LiCalsi's direction that he could avoid prosecution and deportation of he paid the $500 deductible.

7.  Whether the discussion regarding plaintiff's potential criminal liability for having a relationship with a minor occurred before or after plaintiff had agreed to pay for the damage to LiCalsi's car.

8.  Whether Ernest LiCalsi believed that the plaintiff voluntarily agreed to make restitution of the $500.00 insurance deductible.

9.  Whether Ernest LiCalsi directed, ordered or caused anyone else to have physical contact with the plaintiff.

10. Whether sometime after October 28, 2002, LiCalsi advised Benabente that he was going to be responsible for a $500 deductible on the repairs to the car.

11. The nature and extent of plaintiff's damages, if any.

12. Whether LiCalsi told chief DA investigator Poole that he was going to use Benabente to get his $500 back.

13. Whether DA investigator Poole told LiCalsi that it was not a good idea to use Benabente to get LiCalsi's $500 back.

14. Whether LiCalsi ever told any law enforcement agency or personnel of his intention to refer the automobile accident incident for prosecution.

15. Whether at the vehicle stop investigator Benabente told Plaintiff that he needed to come to the District Attorney Office and speak with LiCalsi about the $500.

16. Whether at the vehicle stop when Plaintiff was informed that he needed to come to the District Attorney Office to speak with LiCalsi about the $500, Plaintiff asked if he could come tomorrow.

17. Whether at the vehicle stop when Plaintiff asked if could come tomorrow to speak

5

with LiCalsi about the $500 Plaintiff was told by investigator that be had better take care of it today.

18.   Whether investigator Benabente physically contacted Plaintiff and lead him across the street from the vehicle stop and with Madera Police Office Anderson placed Plaintiff in the rear seat of the MPD marked patrol cruiser.

19.   Whether MPD office Anderson was instructed by investigator Benabente to take Plaintiff to the rear door of the Madera District Attorney Office.

20.   Whether Plaintiff was transported to the Madera District Attorney Office's back door in the locked back seat of a Madera Police Department marked patrol cruiser.

21.   Whether upon arriving near the rear door of the Madera District Attorney Office, Officer Anderson and Plaintiff waited for investigator Benabente to arrive.

22.   Whether Investigator Benabente removed Plaintiff from the locked rear of the MPD marked cruiser and lead Plaintiff across the street and into the Madera District Attorney through the back door of the office.

23.   Whether at the vehicle stop and before investigator Benabente told Plaintiff he needed to come to the Madera District Attorney Office to speak with LiCalsi, investigator Benabente had obtained sufficient information to arrest Plaintiff for the automobile accident.

24.   Whether at the vehicle stop and before investigator Benabente told Plaintiff he needed to come to the Madera District Attorney Office to speak with LiCalsi, investigator Benabente had obtained sufficient information to provide to LiCalsi for LiCalsi to make a law enforcement report concerning the automobile accident incident.

25.   Whether when investigator Benabente made the vehicle stop on Plaintiff he was investigating the incident for LiCalsi, personally, and not as an investigator for the Madera District Attorney's Office.

6

26.   Whether LiCalsi as investigator Benabente's supervisor actively participated in a plan with Benabente to violate Plaintiff's constitutional rights.

27.   Whether the Madera District Attorney's Office has a policy to conflict out of any matter in which an employee is personally involved.

28.   Whether the practice, policy, or custom of the Madera District Attorney Office to customarily assign case numbers to investigations.

29.   Whether at the time LiCalsi told Poole that he was going to use Benabente to investigate the automobile accident incident, LiCalsi believed it would be a conflict of interest for him and the office to prosecute Plaintiff.

30.   Whether LiCalsi devised and had a plan to obtain $500 from plaintiff.

31.   Whether LiCalsi threatened Plaintiff with prosecution and charges if Plaintiff did not pay the $500.

32.   Whether LiCalsi instructed any other person to threaten Plaintiff with prosecution and charges if Plaintiff did not pay the $500.

33.   Whether LiCalsi knew or should have known that Benabente would threaten Plaintiff with prosecution and charges if Plaintiff did not pay the $500.

34.   Whether LiCalsi through the use of Benabente as his interpreter told Plaintiff that if restitution was not made there could be an arrest, charges and prosecution.

35.   Whether on prior occasions LiCalsi sent investigator Benabente to resolve incidents without going through the system some of which were for friends of LiCalsi.

36.   Whether on some prior occasions investigator Benabente to people that if they did not pay money or solve a problem charges would be filed.

37.   Whether LiCalsi knew that on prior occasions that investigator Benabente had violated constitutional rights of individuals.

38.   Whether LiCalsi is the final policymaker for the Madera District Attorney Office.

39. Whether LiCalsi was the final policymaker when he was acting outside his prosecutorial discretion.

40. Whether LiCalsi created a custom in the Madera District Attorney Office to permit constitutional violations of the rights of individuals.

41. Whether LiCalsi created a custom in the Madera District Attorney Office of handling matter for LiCalsi and his friends by threatening prosecution when there was no formal investigation and prosecution.

42. Whether LiCalsi's actions toward the Plaintiff were motivated by an evil motive or intent or intentionally reckless or callous indifference to Plaintiff's federally protected rights.

## C. Disputed Evidentiary Issues

### 1. Plaintiff

a. Plaintiff anticipates there will be a dispute concerning the admissibility of the testimony of Investigator Markle concerning statements made to him by Investigator Benabente concerning the stop, seizure and return of Quiroz to the Office of the District Attorney. It is plaintiff's position that the issue should be briefed in the trial brief.

b. Plaintiff anticipates there will be a dispute over the admissibility of the expert opinion of defendants' expert witness Joseph J. Callanan and it is plaintiff's position that the dispute should be decided through a motion in limine.

c. Plaintiff anticipates there will be a dispute over the admissibility of the expert opinion of defendants' expert witness John Poyner and it is plaintiff's position that the dispute should be decided through a motion in limine.

d.    Plaintiff anticipates there will be a dispute concerning a voluntary, defense administered, polygraph examination it is anticipated defendants will seek to admit into evidence.  Plaintiff holds the position that defendants and their witness should be precluded from testifying that any such test was administered or the purported results.  It is the position of plaintiff that this dispute should be decided through a motion in limine.

e.    Plaintiff anticipates there will be a dispute concerning an arrest of plaintiff, for petty theft (shoplifting) subsequent to the events giving rise to this litigation.  It is the position of plaintiff that this dispute should be decided through a motion in limine.

f.    In addition to the above plaintiff anticipates filing pretrial motions in limine which will include, but not be limited to the following:

    i.    To preclude evidence of any personnel investigations relating to Dan Poole.

    ii.    To preclude testimony of documents or witnesses not previously disclosed to defendants during discovery.

**2.  Defendants**

a.    Defendants anticipate that their pretrial motions in limine will include, but will not be limited to the following:

    i.    To preclude evidence regarding defendants' insurance.

    ii.    To preclude evidence concerning opinions of experts not properly designated by plaintiff.

    iii.    To preclude plaintiff's counsel from making any inquiry, comment or argument before the jury that suggests that jurors should base plaintiff's damages on an  amount that the jurors would charge to endure similar injuries.

9

iv.     To preclude evidence that is protected by Penal Code § 832.7 and § 832.8, and Evidence Code § 1040 and § 1043.

v.      To preclude the use of documents or witnesses not previously disclosed to defendants during discovery.

vi.     To exclude newspaper articles and testimony of authors of the articles as hearsay.

vii.    To bifurcate issues of liability relating to the County of Madera; and the issue of punitive damages.

viii.   To preclude testimony from Dan Poole that is based on hearsay and speculation.

ix.     To exclude any reference to the State Bar Investigation and the results and findings.

x.      To preclude any opinions from Dan Poole regarding whether a crime was committed by LiCalsi.

xi.     To exclude hearsay statements of Matt Markle.

### D.  Special Factual Information

#### 1.  Plaintiff

None.

#### 2.  Defendants

This is a civil rights action for damages brought by plaintiff Honorio Quiroz pursuant to 42 U.S.C. section 1983.   Mr. Quiroz was involved in a  motor vehicle accident which occurred on October 16, 2002, with defendant LiCalsi's son, Eric LiCalsi.  At the time of the subject accident, plaintiff Quiroz was in the country illegally and was driving without a license and without insurance.  When information was exchanged he gave a false name.

After learning that there was no insurance on the other car and the information given by the driver was false, Mr. LiCalsi approached an officer with the Madera Police

10

Department about conducting an investigation. When the Madera Police Department declined to take a report unless LiCalsi could provide the identity of the driver, Mr. LiCalsi asked a Spanish speaking investigator to locate and identify the driver.  An investigation was conducted and several weeks after the accident the vehicle driven by Mr. Quiroz was located and stopped.  Mr. Quiroz again gave false identification, this time to a police officer.  Ultimately, plaintiff produced an ID card.  He agreed to come to the District Attorney's office to discuss the matter.  He also volunteered to pay for the damage to LiCalsi's car.  At this point plaintiff was subject to criminal prosecution for violations of Penal Code section 148(a) (resisting, delaying or obstructing an officer in the performance of his duties); Vehicle Code section 12500 (driving without a valid driver's license); and Penal Code section 148.9 (false information of identity to a peace officer) as a result of his conduct at the time of the stop.

Mr. Quiroz went to the District Attorney's office where he discussed with Mr. LiCalsi, through Mr. Benabente, the resolution of this matter through the payment of the deductible  which Mr. LiCalsi owed.  An agreement was reached that Mr. Quiroz would pay for the damage in two payments.  Mr. LiCalsi opted not to pursue criminal prosecution.

The defenses asserted by defendants are set forth below under "Points of Law."

**IV.  Relief Sought**

Plaintiff requests an award of compensatory damages.  Plaintiff also requests an award of punitive damages, attorneys fees, cost of suit, declaratory relief and any other relief to which she may be entitled.

Defendants seek a defense verdict, costs and attorney's fees for defense of this action.

**V.  Points of Law**

**A.  Plaintiffs' Contentions**

**1.  Fourth Amendment**

1   There should be no dispute that the initial stop of Plaintiff was for the purpose of

2   a traffic violation.  The Mercury Topaz driven by the Plaintiff had a broken left rear taillight and

3   had expired license plate tags.  Once Plaintiff was stopped for the traffic violation he could have

4   be cited or arrested for the traffic violations.  No further investigation was necessary.

5   Additionally, at the traffic stop investigator Benabente informed Plaintiff that the

6   recent automobile accident involving Plaintiff also involved an automobile owned by his boss the

7   District Attorney.  Investigator Benabente informed Plaintiff that LiCalsi was out $500 and that

8   Plaintiff needed to take care of it.  Plaintiff asked Benabente if he could take care of it tomorrow,

9   to which Benabente replied that Plaintiff needed to take care of it today.  Benabente then told

10   Plaintiff he could either come to the District Attorney Office and take care of it or go to jail.

11   At this time additional law enforcement had arrived, Benabente had taken and

12   kept Plaintiff's wallet, and Benabente directed Plaintiff to the rear door of Madera Police Officer

13   Sam Anderson's marked police cruiser.  Plaintiff was placed in the locked rear portion of the

14   MPD cruiser and at Benabente's instruction, Officer Anderson transported Plaintiff the rear door

15   of the Madera District Attorney Office.  Officer Anderson and Plaintiff waited in the MPD

16   cruiser for Benabente to arrive and thereafter Plaintiff was removed from the locked rear area of

17   the cruiser and given to Benabente.  Investigator Benabente then proceeded to lead Plaintiff to

18   the rear door of the Madera District Attorney Office, entering through the back door, and taking

19   Plaintiff to Benabente's office.

20   Benabente returned with LiCalsi and the discussion centered on how Plaintiff was

21   going to pay LiCalsi $500 and what charges and prosecution could take place if the $500 was not

22   paid.  At no time did Benabente or LiCalsi inform Plaintiff that he was free to go until after

23   Plaintiff paid $200 to LiCalsi and was instructed to return on November 26, 2005 with an

24   additional $300.  A person is seized when, in view of all the circumstances, a reasonable person

25   would have believed that he is not free to leave.  Gardenhire v Schubert 205 F.3d 303 (6th Cir.

26   2000)

27

28                                                   12

1    Here the stop for the traffic violations had completed.  Investigator Benabente

2    then initiated the plan to get LiCalsi's $500 by compelling Plaintiff to immediately come to the

3    Madera District Attorney Office through words and actions that in view of all the circumstances

4    a reasonable person would have believed that he was not free to say no and walk away.

5    Investigator Benabente made that fact clear when he told Plaintiff go to the District Attorney

6    Office or go to jail.

7    **2.  Supervisory Liability**

8    _____         There can be no dispute that LiCalsi was the supervisor of investigator Benabente.

9    The facts show that LiCalsi told chief investigator Poole that he was going use Benabente to get

10   his $500 back, that LiCalsi provided the written information concerning the automobile accident

11   and that LiCalsi told Benabente on November 14, 2002 page me if you get him.  These acts

12   evidence LiCalsi's direct involvement in the plan to get LiCalsi's $500 back.  Supervisors can be

13   held liable if they play an affirmative part in the alleged deprivation of constitutional rights by

14   setting in motion a series of acts by others which the supervisor knew or reasonably should have

15   known would cause others to inflict the constitutional injury.  Graves v City of Coeur D'Alene,

16   339 F.3d 828, 848 (9th Cir. 2003)

17   Here LiCalsi knew from prior experiences with Benabente that Benabente had

18   previously violated individual's constitutional rights.  And when LiCalsi was with Benabente in

19   Benabente's office with Plaintiff it was LiCalsi who instructed Benabente to inform Plaintiff of

20   possible criminal sexual charges could be filed against Plaintiff even though there was no basis

21   for such allegation for the purpose of keeping the pressure on Plaintiff to return at a later date and

22   pay LiCalsi and additional $300.

23   **3.  Municipal Liability**

24   Municipal liability is properly asserted under a federal 1983 claim when evidence

25   demonstrates the plaintiff's harm was caused by a constitutional violation and the municipality is

26   responsible for that violation.  Collins v Harker Heights, 503 U.S. 115 (1992)   A municipality

27

28                                                    13

1   can be responsible for the constitutional violation when it permits another to be the policymaker

2   on the issue which has generated the constitutional violation or there is an unconstitutional

3   custom or policy.  Monell v Dep't of Social Servs, 436 U.S. 658, 690 (1978; Oviatt v Pearce,

4   954 F.2d 1470, 1477 (9th Cir. 1992).

5   **B.  Defendants' Contentions**

6   **1. Fourth Amendment Claim**

7           There is no dispute regarding the fact that the vehicle stop of plaintiff was lawful,

8   as was the detention at the scene of the stop for questioning.  Plaintiff argues that the lawful

9   detention was converted to an unlawful seizure in violation of the Fourth Amendment when

10  plaintiff was taken to the District Attorney's office.  It is defendants' contention that plaintiff

11  voluntarily accompanied Fabian Benabente to the District Attorney's Office after acknowledging

12  his fault in the automobile accident and his willingness to make restitution.  Voluntariness is a

13  question of fact to be determined from all the circumstances.  Schneckloth v. Bustamonte, 412

14  U.S. 218, 248-49 (1973).  Informing plaintiff that he did not have to come to the District

15  Attorney's Office or that he was free to leave once he got there is not required in order for

16  consent to be voluntary.  Id. at p. 249.  Furthermore, Benabente's statement that plaintiff could be

17  arrested, which was clearly true given plaintiff's admission that he caused the accident and gave

18  a false name at the scene, does not vitiate the consent.  United States v. Calvente, 722 F.2d 1019,

19  1023 (2nd Cir. 1983).

20          Although the original stop was based on a traffic violation, Benabente had

21  probable cause to arrest plaintiff for hit and run and for giving false information to a police

22  officer.  This fact is conceded by plaintiff.  This situation is analogous to one in which an officer

23  advises a subject that he can obtain a search warrant if consent is not given.  If an officer has

24  probable cause upon which a warrant could issue, consent is not likely to be held invalid.  United

25  States v. Kaplan, 895 F.2d 618, 622 (9th Cir. 1990).  In this case, there is ample evidence to

26

27

28                                                  14

1  support probable cause to arrest plaintiff.  Thus, telling him that he could be arrested, when it is

2  true, does not constitute coercion.  Id.; United States v. Calvente, 722 F.2d at 1023.

3          In Desyllas v. Bernstine, 351 F.3d 934 (9th Cir. 2003) plaintiff, the editor of the

4  Portland University newspaper, came into possession of a box of confidential documents.   When

5  the University president became aware of the situation he directed two University officials to

6  retrieve the documents.  When plaintiff was contacted he was told that he could be arrested for

7  possession of stolen property and that the police could obtain a search warrant to attempt to

8  retrieve the records.  Plaintiff was also told that "we can stay here all night or wait all night if we

9  have to."  Plaintiff ultimately agreed to turn over the records.  The court held that plaintiff was

10  not detained in violation of the Fourth Amendment but rather remained voluntarily until deciding

11  to give up the box of records of his own choosing.  Id. at 939.

12          Assuming that it is determined that plaintiff did not consent to accompany Mr.

13  Benabente but was "seized" for the purpose of questioning him, such a seizure was lawful

14  because there was probable cause to arrest.  "Probable cause" for a warrantless arrest arises when

15  the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent

16  person to believe "that the suspect has committed, is committing, or is about to commit an

17  offense."  Barry v. Fowler,  902 F.2d at 773 (citing Michigan v. DeFillippo, 443 U.S. 31, 37

18  (1979)); see also Beck v. Ohio, 379 U.S. 89, 91 (1964).   Plaintiff admitted to Benabente that he

19  gave false information at the scene of an accident; and he initially lied to Benabente regarding his

20  true name.   Plaintiff was subject to arrest for the hit and run and giving false identification to a

21  peace officer.  Thus an officer would have the lawful authority to continue the investigation into

22  these matters, regardless of whether the basis for the original stop was for a traffic violation.

23  United States v. Calvente, 722 F.2d at 1023; United States v. Kaplan, 895 F.2d at 622.

24          The analysis of whether a "seizure" is lawful is an objective one.  Whren v. U.S.,

25  517 U.S. 806; Graham v. Connor, 490 U.S. 386 (1989).  The subjective motivation of an officer

26  has no bearing on the constitutional reasonableness of a seizure.  An officer's evil intentions will

27

28                                          15

not make a Fourth Amendment violation out of an objectively reasonable seizure; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.  Whren v. U.S., 517 U.S. at 813-14; Graham v. Connor, 490 U.S. at 397.  In this case it is undisputed that there was probable cause to arrest plaintiff for multiple criminal violations; and to question him in regard to those criminal violations.  Even assuming there was an involuntary seizure and the seizure was based on a pretext to pursue payment of $500, there was an objectively reasonable basis for the seizure, therefore, there can be no Fourth Amendment violation.

### 2.  Fourteenth Amendment

Plaintiff's Fourteenth Amendment claim was dismissed pursuant the Court's ruling on defendants' motion for summary judgment.

### 3. Supervisory Liability

The facts of this case includes none of the prerequisites for supervisory liability. Supervisor liability can be established only by proof of some affirmative conduct closely connected to plaintiff's injury.  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991). The evidence will establish that Mr. LiCalsi asked Mr. Benabente to locate plaintiff and that LiCalsi expected Benabente to act professionally and lawfully.

### 4. Municipal Liability

To impose municipal liability against the County of Madera under section 1983 for a violation of constitutional rights, plaintiff must show: "(1) that he possessed a constitutional right  of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and, (4) that the policy is the 'moving force behind the constitutional violation."  Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 388-89 (1989)).

### 5.  Punitive Damage Claim

Plaintiff has made a claim for punitive damages against the defendant LiCalsi. Punitive damages are only proper under 42 U.S.C. §1983 when the defendants' conduct is shown

16

to be motivated by evil motive or intent or when it involves a reckless or callous indifference to the federally protected rights of others.  Smith v. Wade, 461 U.S. 30, 56 (1983) .  There are no facts or evidence in this case which would support such a claim.

**VI.  Abandoned Issues**

Plaintiff abandoned his Fifth Amendment claim against LiCalsi.  The Fifth Amendment claim against the County was dismissed pursuant to the court's order on the County's Motion to Dismiss.

**VII.  Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

**A.  Plaintiffs' Witnesses**

1.  Ernest LiCalsi
    209 West Yosemite Avenue
    Madera, California 93637

2.  Honorio Quiroz
    (Contact through plaintiff's counsel)

3.  Adrianna G. Hernandez
    301 North "B" Street
    Madera, California 93638

4.  Elizabeth Torrez
    26433 Avenuie 13
    Madera, California 93637

5.  Luis Rafael Saldivar
    896 Shannon
    Madera, California 93637

6.  Fabian Benabente
    Madera, California 93638

7.  MPD officer Sam Anderson
    Madera City Police Department

17

203 W. 4th Street
Madera, California 93637

8.    Matthew Markle
      Madera, California 93638

9.    Dan Poole
      Madera, California 93638

10.   Terry Ginder
      Madera District Attorney Office
      209 West Yosemite Ave
      Madera, California 93637

11.   Michael Stanford
      Department of Justice
      Fresno, California

12.   John Balbach
      Department of Justice
      Fresno, California

13.   Mary LeMaster
      Madera District Attorney Office
      209 West Yosemite Avenue
      Madera, California 93637

14.   Ray Zarate
      5151 N. Gates
      Fresno, California

15.    Eric Wyatt
      209 West Yosemite Avenue
      Madera, California 93637

16.   Glenna Jarvis
      Madera Tribune
      Madera, California 93638

17.   Charles McCarthy
      Fresno Bee
      Madera, California 93637

18.   Jack Porter
      Madera, California

19.   Scott McKinney
      Madera, California

20.   Lisa Aleman-Padilla
      Madera, California

18

21.   Shelly Cremer Sinnet
      209 West Yosemite Avenue
      Madera, California 93637

22.   Gina Barsotti
      Fresno, California

23.   Karen Mitchell
      Office of the City Attorney
      San Diego, California

**B.  Defendants' Witnesses**

1.    Eric LiCalsi
      (contact through counsel for Ernest LiCalsi)

2.    Michael Tolle
      4780 North Van Ness
      Fresno, California 93704

3.    Adrianna Guadalupe Hernandez
      301 North "B" Street, Apt. 5
      Madera, California 93637

4.    Elizabeth Torrez
      Madera High School South Campus
      26433 Avenue 13
      Madera, California 93637

5.    Luis Rafael Saldivar
      896 Shannon Street
      Madera, CA

6.    Erica Castro
      896 Shannon Street
      Madera, California

7.    Seann Garcia
      Pyramid Insurance Company

8.    Ernest J. LiCalsi
      District Attorney, County of Madera
      Government Center
      209 W. Yosemite Avenue
      Madera, California 93637

9.    Susan LiCalsi
      (contact through counsel for Ernest LiCalsi)

10.   Fabian Benabente
      Madera, California 93637

19

11.    Mark Knox
       Specialty Paint and Body Works
       404 S. Gateway
       Madera, California 93637

12.    Sharalyn Ayers
       Allied Insurance Company
       2340 W. Cleveland, PMB 379
       Madera, California 93637

13.    PMK
       Allied Insurance/Calfarm Insurance
       2301 Circadian Way
       Santa Rosa, California 95402

14.    Joseph J. Callanan
       2900 N. Government Way - PMB 324
       Coeur d'Alene, Idaho 83815

15.    John R. Poyner
       District Attorney, Colusa County District Attorney's Office
       547 Market Street
       Colusa, CA 95932

16.    Luis Rovner, Ph.D.
       Rovner & Associates
       4191 Marcos Road
       Woodland Hills, CA 91364

17.    Officer Sam Anderson
       Madera City Police Department
       203 W. 4th Avenue
       Madera, California 93637

18.    John H. Baker
       Deputy District Attorney, County of Madera
       Government Center
       209 W. Yosemite Avenue
       Madera, California 93637

19.    Fred Flores
       Fresno, CA

20.    Sgt. Ken Alley
       Madera Police Department
       Madera, CA

21.    Jo Graves
       Attorney General's Office
       Sacramento, CA

22.    Matthew Markle

20

Madera, California 93637

23.  Daniel Poole
     Madera, California 93637

24.  Terry Ginder
     Office of the District Attorney, County of Madera
     Government Center
     209 W. Yosemite Avenue
     Madera, California 93637

25.  Michael Stanford
     Department of Justice
     Fresno, California

26.  John Balbach
     Department of Justice
     Fresno, California

27.  Eric Wyatt
     Government Center
     209 W. Yosemite Avenue
     Madera, California 93637

28.  Honorio Quiroz
     305 N. "B" Street, Apt. 1
     Madera, California

29.  Custodian of Records for Phone Company

30.  Mary LeMaster
     Madera District Attorney's Office
     209 W. Yosemite
     Madera, CA 93637

31.  Steve Horan
     Porter, Scott, Weiberg & Delehant
     350 University Ave.
     Sacramento, CA

32.  Lou Donaldson
     Madera, CA

33.  Tom Dubose
     Chowchilla, CA

34.  Ray Zarate
     5151 N. Gates
     Fresno, CA 93722

35.  Encarnacion Ramirez

21

Madera, CA

36.    Officer Eddie Guzman
       Madera Police Department
       Madera, CA

37.    Dawn Donovan
       Fresno, CA

38.    Raul Saladana
       Fresno, CA

39.    Dave Prentice
       Fresno, CA

40.    Galen Rutiaga
       Madera District Attorney's Office
       209 W. Yosemite
       Madera, CA 93637

41.    Kathy Taylor
       County of Madera
       209 W. Yosemite
       Madera, CA 93637

42.    Any witnesses listed by plaintiff.

## VIII.  Exhibits

The following is a list of documents or other exhibits that the parties expect to offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

### A.  Plaintiffs' Exhibits

1.     All exhibits to all deposition taken in connection with this case.

2.     All documents provided by defendant LiCalsi and defendant County of Madera in each parties' Rule 26 disclosure.

3.     All documents provided by Plaintiff pursuant to his Rule 26 disclosure.

4.     All documents produced to any Request for Production of Documents served in this case.

22

5.      Attorney General's investigation of LiCalsi relating to this incident and the statements, exhibits, transcripts and tape recordings of statements.

6.      CLETS printout outs relating to automobile driven by Plaintiff.

7.      Receipts for money paid to LiCalsi from Plaintiff.

8.      Fresno Bee Article dated July 12, 2005.

9.      Madera District Attorney Memorandums relating to this case.

10.     LiCalsi letter to Mike Stanford.

11.     LiCalsi email to friends.

12.     Investigator Markle Investigative Memorandum.

13.      February 2003 Fresno Bee article written by Lisa Aleman-Padilla.

14.     Insurance documents concerning LiCalsi insurance claim.

15.     Madera Tribune article written by Glenna Jarvis.

16.     California State Bar Order of Public Reproval relating to LiCalsi.

17.     Business card of Fabian Benabente.

18.     Policy book for the Madera District Attorney Office for the period of 2002 obtained through a public records act request by Plaintiff.

19.     Photograph of damage to LiCalsi's automobile.

20.     Photographs of Madera District Attorney Office and surrounding area.

21.     Photograph of area of traffic stop of Plaintiff and surrounding area.

22.     Documents and records of investigator Benabente relating to prior instances he contacted persons for LiCalsi personally rather than as an investigation for the Madera District Attorney Office.

**B.  Defendants' Exhibits**

1.      Photograph of damage to LiCalsi's car.

2.      Note paper with name of "Jose Luis Santiago".

3.      Identification card of Honorio Quiroz.

23

4.      Receipts for payment of money by Honorio Quiroz.

5.      Attorney General's investigation and statements, including transcription and tape recordings of statements taken in regard to same.

6.      Insurance documents regarding LiCalsi's automobile claim.

7.      Estimates and invoices regarding repair of the LiCalsi automobile.

8.      DMV printout on vehicle driven by plaintiff.

9.      Criminal records relating to arrest of Honorio Quiroz on January 21, 2003, including notice to appear, criminal complaint and minute orders.

10.     Police report relating to arrest of Honorio Quiroz on January 21, 2003.

11.     Report prepare by Wal-Mart employee relating to arrest of Honorio Quiroz on January 21, 2003.

12.     Phone records regarding Dan Poole and Fabian Benabente.

13.     Documents regarding the prosecution of Danny Orta, including criminal complaint.

14.     All exhibits to all depositions taken in connection with this case.

**IX.  Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions**

Plaintiff intends to introduce the depositions taken in this action, and attached exhibits for all purposes allowed under the Federal Rules of Civil Procedure and Evidence. Plaintiff also intends to introduce the following:

1.      All responses by each defendant to all interrogatories served by plaintiff;

2.      All responses by each defendant to all request for admissions served by plaintiff;

3.      All responses by each defendant to all request for production of documents served by plaintiff.

Defendants  intend to introduce the depositions taken in this action, and attached exhibits, for all purposes allowed under the Federal Rules of Civil Procedure and Evidence.

24

Defendants also intend to introduce the following: interrogatories responded to by plaintiff (all sets and supplements); requests for admissions responded to by plaintiff (all sets); and request for documents responded to by plaintiff (all sets).

**X.  Further Discovery or Motions**

      None anticipated.

**XI.  Stipulations**

      None anticipated.

**XII.  Amendments/Dismissals**

      None.

**XIII.  Settlement Negotiations**

      On February 4, 2002, defendants served on the plaintiff a Rule 68 offer in the amount of $5,001.00, plus recoverable costs and reasonable attorney's fees to the date of the Offer of Judgment in an amount to be fixed by the court.

      At the settlement conference held in this matter on March 30, 2005, plaintiff demanded $200,000.00 to settle this action.  Defendants extended a $20,000.00 settlement offer to the plaintiff.  Plaintiff and plaintiff's counsel terminated settlement discussions and stated that they wanted to conduct additional discovery. Plaintiff has since made a settlement demand to settle the case as to the County only in the amount of $300,000.

**XIV.  Agreed Statement**

      The parties do not believe that a presentation of all or part of this action upon an agreed statement of facts is feasible or advisable.

**XV.  Separate Trial Of Issues**

      Defendants intend to seek bifurcation of the liability of the County of Madera on plaintiff's federal and state claims; as well as the issue of punitive damages.

      The court will bifurcate the issue of punitive damages.

**XVI.  Impartial Experts - Limitation Of Experts**

The parties have designated their respective experts and do not believe that the Court appointment of an expert or the limitation on the number thereof is advisable.

**XVII.  Attorneys' Fees**

Plaintiff is requesting attorney fees pursuant to 42 U.S.C. § 1988

Defendants are also seeking costs and attorney's fees pursuant to 42 U.S.C. § 1988 should they prevail in this action.

**XVIII.   Further Trial Preparation**

**A.  Final Witness List**

The parties are ordered to file and serve their final list of witnesses by January 5, 2006.  Additionally, at that time Plaintiffs shall disclose the order of witnesses so that Defendants will be prepared for cross-examination.

Except upon the showing set forth above in section VII, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order in Section VII.

**B.  Trial Briefs**

The parties are directed to file and serve a Trial Brief by December 29, 2005. Local Rule 16-285.  The parties need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or in an opposition brief to a motion in limine.  Any response to a Trial Brief shall be filed and served by January 5, 2006.

**C.  Duty of Counsel to Pre-Mark Exhibits**

The parties are ordered to confer no later than December 15, 2005, for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1. Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff by January 5, 2006, one for use by the Courtroom Clerk and the other for the court; and

(b)  One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.  Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3. Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|-----------|-------------|----------------------|----------------------|-----------------|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies.  However, the copies must be legible.  If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

**D.  Discovery Documents**

By January 5, 2006, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has previously been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by January 5, 2006.

**E.  Motions In Limine Hearing and Briefing Schedule**

The hearing for motions in limine will be held on January 5, 2006 at 1:30 p.m.  In addition to addressing any filed motions in limine, at that time the court will also settle, to the extent possible, any other matter pertaining to the conduct of the trial.

Counsel are expected to be fully cognizant of the legal issues involved in the case by the date of the hearing for motions in limine.

By 4:00 p.m. on December 22, 2005, all motions in limine, with supporting points and authorities, shall be filed and served either personally or by facsimile upon opposing counsel.

By 4:00 p.m. on January 3, 2006, opposition to any motion in limine shall be filed and served either personally or by facsimile upon opposing counsel.  If a party does not oppose a motion in limine, that party shall file and serve in the same manner a Statement of Non-Opposition to that motion in limine.

**F.  Morning Conferences During Trial**

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well. The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

**G.  Order Of Witnesses**

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial session.

**XIX.  Objections to Pretrial Order**

Any party may, within ten (10) calendar days after the date of service of this order, file and serve written objections to any of the provisions of this order.  Local Rule 16-283.  Such objection shall specify the requested corrections, additions or deletions.

**XX.  Rules of Conduct During Trial**

**A.  General Rules**

1.  All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2.  All oral presentations shall be made from the podium, unless otherwise permitted by the court.

3.  Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4.  Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

**B.  Jury Selection**

1.  The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

**C.  Opening Statements**

1.  Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

**D.  Case in Chief**

1.  Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

**E.  Witnesses**

1.  Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

**F.  Exhibits**

1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2. An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3. The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

### G.  Objections

1. No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2. The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

### H.  Closing Argument

1. Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.


FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.


IT IS SO ORDERED.

**Dated:    December 12, 2005**              **_____/s/ Anthony W. Ishii_____**
0m8i78                                                    UNITED STATES DISTRICT JUDGE